**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

RECEIVED

2006 JUL 17 A 10: 01

~~~~~~ ~~~~ CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **DAVID FINNEY, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** 3:06CV 622 |
| ) | |
| **NISSAN NORTH AMERICA, INC.,** ) | |
| **a foreign corporation; TAKATA U.S.A.** ) | |
| **CORPORATION d/b/a TAKATA** ) | |
| **CORPORATION, a foreign corporation;** ) | |
| **TAKATA SEAT BELTS, INC.,** ) | |
| **a foreign corporation; TAKATA** ) | |
| **RESTRAINT SYSTEMS, INC., a foreign** ) | **DEMAND FOR JURY TRIAL** |
| **corporation; TAKATA NORTH** ) | |
| **AMERICAN, INC.; a foreign** ) | |
| **corporation, and TAKATA INC.;** ) | |
| **a foreign corporation,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, David Finney, hereby sues Defendant NISSAN NORTH AMERICA, INC., a foreign corporation ("NISSAN"), TAKATA U.S.A. CORPORATION d/b/a TAKATA CORPORATION, a foreign corporation ("TAKATA U.S.A."), TAKATA SEAT BELTS, INC., a foreign corporation ("TAKATA SEAT BELTS"), TAKATA RESTRAINT SYSTEMS, INC., a foreign corporation ("TAKATA RESTRAINT"), TAKATA NORTH AMERICAN, INC., a foreign corporation ("TAKATA N.A."), and TAKATA INC., a foreign corporation ("TAKATA") and alleges as follows:

1

## PARTIES

1.      Plaintiff, DAVID FINNEY, is a resident citizen of Russell County, Alabama.

2.      Defendant, NISSAN was and is a foreign corporation with its principal place of business in California, is a licensed to do business in the State of Alabama, and conducts substantial business within the State of Alabama.

3.      TAKATA U.S.A. was and is a foreign corporation, incorporated and filed as an entity in the State of Delaware.  TAKATA U.S.A. is not registered with the Alabama Secretary of State as a foreign corporation licensed to transact business in the State of Alabama; however, TAKATA U.S.A. conducts substantial business within the State of Alabama as a supplier of seatbelts to NISSAN for use in their automobiles.

4.      TAKATA SEAT BELTS was and is a foreign corporation, incorporated and filed as an entity in the State of Delaware.  TAKATA SEAT BELTS is not registered with the Alabama Secretary of State as a foreign corporation licensed to transact business in the State of Alabama; however, TAKATA SEAT BELTS conducts substantial business within the State of Alabama as a supplier of seatbelts to NISSAN for use in their automobiles.

5.      TAKATA RESTRAINT was and is a foreign corporation, incorporated and filed as an entity in the State of Delaware.  TAKATA RESTRAINT is not registered with the Alabama Secretary of State as a foreign corporation licensed to transact business in the State of Alabama; however, TAKATA RESTRAINT conducts substantial business within the State of Alabama as a supplier of seatbelts to NISSAN for use in their automobiles.

6.    TAKATA N.A. was and is a foreign corporation, incorporated and filed as an entity in the State of Delaware.  TAKATA N.A. is not registered with the Alabama Secretary of State as a foreign corporation licensed to transact business in the State of Alabama; however, TAKATA N.A. conducts substantial business within the State of Alabama as a supplier of seatbelts to NISSAN for use in their automobiles.

7.    TAKATA was and is a foreign corporation, incorporated and filed as an entity in the State of Delaware.  TAKATA is not registered with the Alabama Secretary of State as a foreign corporation licensed to transact business in the State of Alabama; however, TAKATA conducts substantial business within the State of Alabama as a supplier of seatbelts to NISSAN for use in their automobiles.

8.    At all times material to this lawsuit, each of the Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling NISSAN automobiles and their components to the general public including the Plaintiff.

9.    At all times material to this lawsuit, each of the Defendants was authorized to do business within the state of Alabama and did in fact supply, sell, and/or otherwise introduce into the stream of commerce NISSAN automobiles within the state of Alabama; specifically, the automobile made the basis of this lawsuit.

10.    Unless otherwise distinguished, at all relevant times indicated herein, the use of the collective term "Defendants" shall include all named Defendants.

3

11.    Unless otherwise specifically distinguished, at all relevant time indicated herein, all Defendants, individually and collectively, jointly and severally, were involved in researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the NISSAN automobile and its component parts made the basis of this lawsuit.

## JURISDICTION AND VENUE

12.    Venue is proper in this Court.  The accident made the basis of this lawsuit occurred in the State of Alabama within this judicial district and many of the acts and/or occurrences giving rise to the injuries and damages complained of herein occurred in the state of Alabama within this judicial district.  Specifically, the accident made the basis of this suit occurred in Russell County, Alabama, located in the Eastern Division of the Middle District of Alabama.

13.    There is complete diversity of citizenship between the parties and jurisdiction is based upon 28 U.S.C. § 1332.  Further, this is an action for damages in excess of Seventy-Five Thousand ($75,000.00) Dollars exclusive of interest and costs.

14.    The Court has jurisdiction over the Defendants because the Defendants conduct business in Alabama, and/or committed a tort, in whole or in part, in Alabama, and/or have continuing minimum contacts with the State of Alabama.

15.    Joinder of all parties in this case in entirely appropriate and permissible under Rule 20 of the FEDERAL RULES OF CIVIL PROCEDURE.

## FACTUAL ALLEGATIONS

16.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein and further alleges as follows:

17.    At all times material hereto, Defendants, designed, manufactured, assembled, and supplied vehicles worldwide, including in Alabama. Defendants supplied vehicles and/or vehicle components, including the vehicle in question, to consumers and dealers in Alabama and derived substantial revenue from its business dealings in the State of Alabama. Defendants hold themselves out as companies experienced in the design, manufacture, assembly and marketing of automobiles.

18.    Defendants are licensed to conduct business and in fact do conduct business, direct or indirectly by agent, in the state of Alabama. At all relevant times, involved in researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile at issue in this lawsuit.

19.    At all relevant times, Defendants acted in conjunction with each other including, but not limited to, by way of and/or through affiliated, related, jointly owned and/or jointly controlled entities or subsidiaries.

20.    At all relevant times, NISSSAN acted in conjunction with other affiliated, related, jointly owned or controlling entities, including Defendants TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and TAKATA.

5

21.     At all relevant times, NISSAN was in the business of designing, licensing, promoting, manufacturing, marketing, selling and distributing automobiles including the automobile at issue in this lawsuit.

22.     At all relevant times, TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and/or TAKATA. were affiliated with Defendant NISSAN, through merger, joint venture, joint or common ownership or otherwise, and in conjunction and in combination with NISSAN designed, licensed, promoted, manufactured, marketed, distributed, sold and placed in the stream of commerce the seatbelt at issue in this lawsuit.

23.     The automobile in question, including its components, were designed, manufactured, distributed, sold and placed in the stream of commerce by Defendants. The Defendants designed and manufactured automobiles and their components, including seatbelts, using patents.

24.     On or about September 3, 2005, Plaintiff was the owner and operator of a 1992 Nissan Sentra bearing VIN #1N4EB32ACNC771825.  Said vehicle was designed, manufactured, assembled, and distributed by NISSAN.  The Nissan Sentra was equipped with components manufactured by TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and/or TAKATA including the automobile's seatbelts. Upon information and belief, the components manufactured by TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and/or TAKATA were installed into the automobile made the basis of this lawsuit by NISSAN.

6

25.    On said date at approximately 2:20 a.m., Plaintiff was traveling southbound on Alabama State Road 165 at Milepost 24 between County Road 24 and Ft. Benning Road when said vehicle was involved in a single vehicle rollover accident.

26.    The accident occurred after Plaintiff struck an embankment on the western shoulder of the road.  During the accident, the driver's-side door unlatched and the seatbelt buckle mechanism restraining the Plaintiff failed, allowing to be ejected from the vehicle.

27.    As a direct result of the accident on said date, Plaintiff suffered catastrophic bodily injuries and as set forth in greater detail herein.  The losses are permanent and continuing in nature and Plaintiff will continue to suffer losses in the future.

<div align="center">

**COUNT ONE – STRICT LIABILITY**
**DEFECTIVE MANUFACTURE, DESIGN AND FAILURE TO WARN**
**(ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE)**

</div>

28.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein and further alleges as follows:

29.    At all times material hereto, the Defendants, individually and collectively, jointly and severally, have engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile at issue, and its components, which were defective and unreasonably dangerous.

30. At all times material hereto, the automobile sold, distributed, supplied, manufactured, marketed, promoted, and introduced into the stream of commerce by the Defendants was expected to be safe for its intended use, and did reach the Plaintiff without substantial change in the condition in which it was sold.

31. At all times material hereto, the automobile sold, distributed, supplied, manufactured, marketed and/or promoted by the Defendants was defective in design and unreasonably dangerous at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a. When placed in the stream of commerce, the automobile contained unreasonably dangerous defects and was not reasonably safe as intended to be used, subjecting the Plaintiff to risks and which exceed any potential benefit;

b. When placed in the stream of commerce, the automobile was unreasonably dangerous, making use of the automobile more dangerous than an ordinary consumer would expect, including the Plaintiff;

c. The automobile was insufficiently tested for safety;

d. The automobile was marketed despite the fact it was known, or should have been known to the Defendants, to be defective and/or unreasonably dangerous, which outweighed any potential utility;

e. The automobile was not accompanied by adequate instructions and/or warnings to fully inform the Plaintiff of the full nature or extent of the potential for risk thereby rendering the Defendants independently, collectively, jointly and severally, liable to the Plaintiff.

32.    The dangers and risks of harm posed by the automobile were reasonably foreseeable and/or known to the Defendants.  Moreover, the dangers and foreseeable risks of harm associated with the defective automobile, and/or its components, was sufficiently great in relation to the purported benefit, which was nonexistent or negligible at best, so that the automobile could not be properly utilized by anyone, including the Plaintiff.

33.    Defendant, NISSAN, was in the business of designing, manufacturing, assembling and supplying 1992 Sentra model automobiles, including the 1992 Sentra made the basis of the present lawsuit.  The 1992 Sentra at issue was defective and unreasonably dangerous at the time it was designed, manufactured, assembled, distributed and used by the Plaintiff.  The 1992 Sentra was and is defective and unreasonably dangerous within the meaning of the ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE (AEMLD) in one or more of the following respects:

a.    The design of the vehicle was defective in that the passenger restraint system is unreasonably prone to failing in ordinary foreseeable use;

b.    The design of the vehicle was defective in that the vehicle is not reasonably crashworthy to protect occupants in the event of foreseeable rollover incidents;

c.    The design of the vehicle was defective in that it was marketed as a safe and stable passenger vehicle;

d.    The design of the vehicle was defective in that it fails to contain adequate and reasonable warnings and/or instructions about the inherent risk of

seatbelt failure and ejection from the vehicle during ordinary and foreseeable use;

e.     The driver's-side door latch for the vehicle was not crashworthy and was subject to unlatching during ordinary and foreseeable use.

34.     Reasonable and safer alternative designs existed that would have prevented the accident and/or the extent of the injuries suffered.

35.     Defendants, TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and/or TAKATA were in the business of designing, manufacturing, and supplying NISSAN with seatbelts for use in their vehicles, including the automobile made the basis of this lawsuit. The seatbelt supplied to NISSAN for use in Plaintiff's 1992 Sentra vehicle by TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and/or TAKATA was defective and unreasonably dangerous at the time it was designed, manufactured, assembled, distributed and used by the Plaintiff. The seatbelt supplied by TAKATA, TAKATA SEAT BELTS, TAKATA RESTRAINT, TAKATA N.A. and/or TAKATA for use in Plaintiff's 1992 NISSAN Sentra was and is defective and unreasonably dangerous within the meaning of the ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE (AEMLD) in one or more of the following respects:

a.     The design of the vehicles' passenger restraint system, including the driver's seatbelt, is defective in that it is unreasonably prone to failing in ordinary foreseeable use;

b.     The design of the vehicle's passenger restraint system, including the driver's seatbelt, is defective in that the passenger restraint system is not

reasonably crashworthy to protect occupants in the event of foreseeable rollover incidents;

c.    The design of the vehicle's passenger restraint system, including the driver's seatbelt, is defective in that it was marketed as a vehicle safety feature.

d.    The design of the vehicle's passenger restraint system, including the driver's seatbelt, is defective in that it fails to contain adequate and reasonable warnings and/or instructions about the inherent risk of seatbelt failure and ejection from the vehicle during ordinary and foreseeable use.

36.    Reasonable and safer alternative designs existed that would have prevented the accident and/or the extent of the injuries suffered.

37.    But for the aforementioned defective and unreasonably dangerous conditions, the automobile at issue would not have been utilized by the Plaintiff he would not have been exposed to the risks of the defective product, and would not have sustained the injuries alleged herein.

38.    As a direct and proximate result of using and/or being exposed to the defective automobile, the Plaintiff was exposed to a real and impending calamity.

39.    Defendants are liable in that the automobile was in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

40.    Defendants have breached all implied and/or express warranties, conditional and unconditional, made in regard to the safety of the automobile at issue.

41.    As a direct and proximate result of the defective condition of the automobile made the basis of this lawsuit, including, but not limited to its component

11

parts, the Plaintiff was caused to the Plaintiff has sustained serious injuries and damages including, but not limited to:

    a.     catastrophic injury to the body;

    b.     disability;

    c.     disfigurement;

    d.     sustained risk of physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

    e.     other physical injuries;

    f.     health expenses including, without limitation, the cost of numerous consultations with physicians;

    g.     other medical treatment and associated costs;

    h.     physical and mental pain and suffering;

    i.     mental anguish;

    j.     medical and nursing care;

    k.     reasonable and real future fear of risk of future physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

    l.     will likely be deemed uninsurable or will be required to pay increased premiums due to his physical condition;

    m.     humiliation and embarrassment;

    n.     loss of capacity for the enjoyment of life;

    o.     loss of the ability to earn money in the future; and

    p.     loss of his human dignity.

In addition, Plaintiff has been injured in health, strength, and activity, and suffered injuries to the body and mind, the exact nature and extent of which are not known at this time.

**WHEREFORE**, Plaintiff demands judgment against all defendants, independently and collectively, jointly and severally, in an amount equal to the sum that the jury assesses for injuries and damages sustained, together with interest from the date of injury, and the costs of this proceeding. Further, Plaintiff requests that the jury award punitive damages in an amount which will adequately reflect the enormity of the defendants' wrongful acts and which will effectively prevent other similar wrongful acts in the future.

<div align="center">

**COUNT II**
**FAILURE TO WARN**

</div>

42.     Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein and further alleges as follows:

43.     At all times material hereto, the Defendants, individually and collectively, have engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile made the basis of this lawsuit, and its corresponding components, that were defective and unreasonably dangerous to the Plaintiff.

44.     The automobile at issue was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert the Plaintiff to the unreasonably dangerous risks and reactions associated with

<div align="center">13</div>

automobile, including, but not limited to it's safety restraint system and/or door latch, and/or other serious and life threatening defects.

45.    Plaintiff used the automobile for its intended purpose.

46.    Plaintiff could not have discovered any defect in the automobile and/or its components through the exercise of reasonable care.

47.    The Defendants, being in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling automobiles and/or automobile components are held to the level of knowledge of an expert in the field of automobiles and automobile components and/or creating reasonably safe, suitable automobiles.

48.    The Plaintiff did not and could not have substantially the same knowledge as Defendants and no adequate warnings were communicated to him

49.    Any and all warnings given by the Defendants to the Plaintiff were inadequate, insufficient, inaccurate, and/or ambiguous.

50.    The Defendants had a continuing duty to warn the Plaintiff of the risks and dangers associated with the automobile made the basis of this lawsuit, which were foreseeable and/or known to the Defendants.

51.    As a direct and proximate result of the Defendants' failure to warn, the Plaintiff was caused to the Plaintiff has sustained serious injuries and damages including, but not limited to:

     a.    catastrophic injury to the body;

     b.    disability;

c.    disfigurement;

d.    sustained risk of physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

e.    other physical injuries;

f.    health expenses including, without limitation, the cost of numerous consultations with physicians;

g.    other medical treatment and associated costs;

h.    physical and mental pain and suffering;

i.    mental anguish;

j.    medical and nursing care;

k.    reasonable and real future fear of risk of future physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

l.    will likely be deemed uninsurable or will be required to pay increased premiums due to his physical condition;

m.    humiliation and embarrassment;

n.    loss of capacity for the enjoyment of life;

o.    loss of the ability to earn money in the future; and

p.    loss of his human dignity.

In addition, Plaintiff has been injured in health, strength, and activity, and suffered injuries to the body and mind, the exact nature and extent of which are not known at this time.

**WHEREFORE**, Plaintiff demands judgment against all defendants, independently and collectively, jointly and severally, in an amount equal to the sum that the jury assesses for injuries and damages sustained, together with interest from the date of injury, and the costs of this proceeding. Further, Plaintiff requests that the jury award punitive damages in an amount which will adequately reflect the enormity of the defendants' wrongful acts and which will effectively prevent other similar wrongful acts in the future.

<div align="center">

**COUNT III**
**BREACH OF WARRANTY OF MERCHANTABILITY**

</div>

52.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein and further alleges as follows:

53.    At all times material hereto, the Defendants, individually and collectively, have engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling automobiles and automobile components that were defective and unreasonably dangerous to the Plaintiff.

54.    The automobile made the basis of this lawsuit was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert the Plaintiff to the unreasonably dangerous risks associated with the automobile made the basis of this lawsuit, including, but not limited to, exposure to excessive risk of passenger-restraint failure, door latch failure, and/or other serious and life threatening side effects.

55.    When Defendants placed the automob8ile at issue into the stream of commerce, they knew of the use for which the vehicle was intended and expressly and/or impliedly warranted to the Plaintiff that the automobile was safe and acceptable for its intended use.

56.    The Plaintiff reasonably relied upon the expertise, skill, judgment, and knowledge of Defendants and upon the express and/or implied warranty that the automobile was of merchantable quality, safe, and fit for its intended use.

57.    The automobile was not of merchantable quality and was not safe or fit for intended use because the product was and is unreasonably dangerous and unfit for human use, in that it caused the Plaintiff catastrophic injuries.  The Defendants breached said warranties because the automobile made the basis of this lawsuit was unduly dangerous and did cause the Plaintiff to suffer catastrophic injuries.

58.    As a direct and proximate result of the Defendants breach of these warranties, the Plaintiff was caused to the Plaintiff has sustained serious injuries and damages including, but not limited to:

    a.    catastrophic injury to the body;

    b.    disability;

    c.    disfigurement;

    d.    sustained risk of physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

    e.    other physical injuries;

    f.    health expenses including, without limitation, the cost of numerous consultations with physicians;

g.      other medical treatment and associated costs;

h.      physical and mental pain and suffering;

i.      mental anguish;

j.      medical and nursing care;

k.      reasonable and real future fear of risk of future physical harm in the form
        of infection, increased disability, increased risk of medical complications,
        and/or death;

l.      will likely be deemed uninsurable or will be required to pay increased
        premiums due to his physical condition;

m.      humiliation and embarrassment;

n.      loss of capacity for the enjoyment of life;

o.      loss of the ability to earn money in the future; and

p.      loss of his human dignity.

In addition, Plaintiff has been injured in health, strength, and activity, and suffered
injuries to the body and mind, the exact nature and extent of which are not known at this
time.

        **WHEREFORE**, Plaintiff demands judgment against all defendants,
independently and collectively, jointly and severally, in an amount equal to the sum that
the jury assesses for injuries and damages sustained, together with interest from the date
of injury, and the costs of this proceeding. Further, Plaintiff requests that the jury award
punitive damages in an amount which will adequately reflect the enormity of the
defendants' wrongful acts and which will effectively prevent other similar wrongful acts
in the future.

## COUNT IV
## NEGLIGENCE

59.     Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein and further alleges as follows:

60.     Defendants, directly and/or indirectly, individually and collectively, negligently engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile made the basis of this lawsuit.

61.     At all times material hereto, Defendants had a duty to the Plaintiff to exercise reasonable care in researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile to him.

62.     Defendants breached that duty and were negligent in their actions, misrepresentations, and omissions in the following ways:

a.     Failed to include adequate warnings that would alert the Plaintiff to the potential risks of failure of the passenger restraint system and/or door latch;

b.     Failed to adequately and properly test the automobile and/or its components before placing it on the market and into the stream of commerce;

19

c.     Failed to conduct sufficient testing on the automobile and its components which, if properly performed, would have shown that the product had serious, life threatening side effects, including, but not limited to, significant risk of passenger-restraint failure, and/or door latch failure;

d.     Failed to provide adequate post-marketing warnings or instructions after the Defendants knew or should have known of the significant risks passenger-restraint failure, and/or door latch failure, and/or other serious and life threatening defects;

e.     Failed to warn the Plaintiff that the automobile and/or its component parts had not been adequately tested or studied as to safety.

63.     Defendants knew or should have known that the automobile posed unreasonably dangerous risks including, but not limited to, risk of passenger-restraint failure, risk of door latch failure, and/or other serious and life threatening side effects. Defendants nevertheless aggressively and negligently made, created, manufactured, assembled, designed, tested, labeled, supplied, sterilized, packaged, distributed, promoted, marketed, advertised, warned, sold, resold, or otherwise introduced into interstate commerce the automobile made the basis of this lawsuit knowing it was unsafe for its intended use.

64.     As a direct and proximate result of the negligent actions and/or omissions of Defendants, the Plaintiff was caused to the Plaintiff has sustained serious injuries and damages including, but not limited to:

a.     catastrophic injury to the body;

b.     disability;

c.    disfigurement;

d.    sustained risk of physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

e.    other physical injuries;

f.    health expenses including, without limitation, the cost of numerous consultations with physicians;

g.    other medical treatment and associated costs;

h.    physical and mental pain and suffering;

i.    mental anguish;

j.    medical and nursing care;

k.    reasonable and real future fear of risk of future physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

l.    will likely be deemed uninsurable or will be required to pay increased premiums due to his physical condition;

m.    humiliation and embarrassment;

n.    loss of capacity for the enjoyment of life;

o.    loss of the ability to earn money in the future; and

p.    loss of his human dignity.

In addition, Plaintiff has been injured in health, strength, and activity, and suffered injuries to the body and mind, the exact nature and extent of which are not known at this time.

**WHEREFORE**, Plaintiff demands judgment against all defendants, independently and collectively, jointly and severally, in an amount equal to the sum that the jury assesses for injuries and damages sustained, together with interest from the date of injury, and the costs of this proceeding. Further, Plaintiff requests that the jury award punitive damages in an amount which will adequately reflect the enormity of the defendants' wrongful acts and which will effectively prevent other similar wrongful acts in the future.

## COUNT V
## WANTONNESS

65.     Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein and further alleges as follows:

66.     Defendants, directly and/or indirectly, individually and collectively, wantonly engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile made the basis of this lawsuit.

67.     At all times material hereto, Defendants had a duty to the Plaintiff to exercise reasonable care in researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the automobile made the basis of this lawsuit to him.

68.     Defendants breached that duty and were wanton in their actions, misrepresentations, and omissions in the following ways:

a.  Failed to include adequate warnings that would alert the Plaintiff to the potential risks of failure of the passenger restraint system and/or door latch;

b.  Failed to adequately and properly test the automobile and/or its components before placing it on the market and into the stream of commerce;

c.  Failed to conduct sufficient testing on the automobile and its components which, if properly performed, would have shown that the product had serious, life threatening side effects, including, but not limited to, significant risk of passenger-restraint failure, and/or door latch failure;

d.  Failed to provide adequate post-marketing warnings or instructions after the Defendants knew or should have known of the significant risks passenger-restraint failure, and/or door latch failure, and/or other serious and life threatening defects;

e.  Failed to warn the Plaintiff that the automobile and/or its component parts had not been adequately tested or studied as to safety.

69.  Defendants knew or should have known that the automobile posed unreasonably dangerous risks including, but not limited to, risk of passenger-restraint failure, risk of door latch failure, and/or other serious and life threatening side effects. Defendants nevertheless aggressively and wantonly made, created, manufactured, assembled, designed, tested, labeled, supplied, sterilized, packaged, distributed, promoted, marketed, advertised, warned, sold, resold, or otherwise introduced into

interstate commerce the automobile made the basis of this lawsuit knowing it was unsafe for its intended use.

70.    As a direct and proximate result of the wanton actions and/or omissions of Defendants, the Plaintiff was caused to the Plaintiff has sustained serious injuries and damages including, but not limited to:

a.    catastrophic injury to the body;

b.    disability;

c.    disfigurement;

d.    sustained risk of physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

e.    other physical injuries;

f.    health expenses including, without limitation, the cost of numerous consultations with physicians;

g.    other medical treatment and associated costs;

h.    physical and mental pain and suffering;

i.    mental anguish;

j.    medical and nursing care;

k.    reasonable and real future fear of risk of future physical harm in the form of infection, increased disability, increased risk of medical complications, and/or death;

l.    will likely be deemed uninsurable or will be required to pay increased premiums due to his physical condition;

m.    humiliation and embarrassment;

n.    loss of capacity for the enjoyment of life;

o.    loss of the ability to earn money in the future; and

p.    loss of his human dignity.

In addition, Plaintiff has been injured in health, strength, and activity, and suffered injuries to the body and mind, the exact nature and extent of which are not known at this time.

**WHEREFORE**, Plaintiff demands judgment against all defendants, independently and collectively, jointly and severally, in an amount equal to the sum that the jury assesses for injuries and damages sustained, together with interest from the date of injury, and the costs of this proceeding. Further, Plaintiff requests that the jury award punitive damages in an amount which will adequately reflect the enormity of the defendants' wrongful acts and which will effectively prevent other similar wrongful acts in the future.

**PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY**

_____
K. Stephen Jackson (JAC034)
Joseph L. "Josh" Tucker (TUC033)
Joel L. DiLorenzo (DIL018)
*Attorneys for Plaintiff*

**JACKSON & TUCKER, P.C.**
Black Diamond Building
2229 First Avenue North
Birmingham, Alabama 35203
Telephone: (205) 252-3535
Facsimile: (205) 252-3536

Walter B. Calton, Esq.
*Attorney for Plaintiff*
312 East Broad Street
Eufaula, AL  36027


**SERVE DEFENDANTS VIA CERTIFIED MAIL AT:**


**Takata U.S.A. Corporation**
**c/o Registered Agent**
**The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, DE 19801**

**Takata Seat Belts, Inc.**
**c/o Registered Agent**
**The Prentice Hall Corporation System, Inc.**
**2711 Centerville Road, Suite 400**
**Wilmington, DE 19808**

**Takata Restraint Systems, Inc.**
**c/o Registered Agent**
**The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, DE 19801**

**Takata North American, Inc.**
**c/o Registered Agent**
**The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, DE 19801**

**Takata Inc.**
**c/o Registered Agent**
**The Prentice Hall Corporation System, Inc.**
**2711 Centerville Road, Suite 400**
**Wilmington, DE 19808**

**Nissan North America, Inc.**
**c/o Registered Agent**
**Lanier Ford Shaver & Payne, P.C.**
**200 West Side Square – Suite 5000**
**Huntsville, AL 35801**